## WILL BACON v. STATE.

No. A-1615.   Opinion Filed June 11, 1913.

(132 Pac. 829.)

APPEAL — Ground for Reversal — Erroneous Evidence. Evidence, which does not tend in any degree to prove the offense charged and has no bearing upon any legitimate issue, and the only effect of which is to prejudice the jury, is incompetent; for this reason it was reversible error to admit and read to the jury, over the defendant' objection, an information charging another person with a similar offense and verified by the complaining witness in the case on trial.

(Syllabus by the Court.)

*Appeal from County Court, Caddo County;*
*C. Ross Hume, Judge.*

Will Bacon was convicted of violating the prohibition law, and he appeals. Reversed.

*Jorgenson & Wamsley,* and *Pruiett & Sniggs,* for plaintiff in error.

*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *C. J. Davenport,* for the State.

DOYLE, J. Plaintiff in error was convicted on an information filed in the county court of Caddo county, October 17, 1911, wherein it was charged that Will Bacon did on September 30, 1911, in said county, sell A. D. Blasingame two pints of whisky. On November 28th the court sentenced him in accordance with the verdict of the jury to be confined in the county jail for 60 days and to pay a fine of $200. To reverse the judgment an appeal was perfected by filing in this court February 15, 1912, a petition in error with case-made.

The complaining witness, Blasingame, testified, in substance, that he was a deputy state enforcement officer; that the defendant, Will Bacon, conducted a wagon yard in the town of Carnegie; that on September 30th he and John Cummins went to a livery barn in Carnegie and got a team, and with Buery Knight they drove down Main street and there met the defendant and called him to the buggy and asked him if he had any whisky, and he said "yes"; that the defendant got in and they drove to his wagon yard where the defendant got out and asked him how much he wanted, and he said a pint; that he went and got a pint of whisky and came back, and witness said to the boys, "I believe we will get another pint"; and the defendant went and got another pint and he paid him $2, and they then drove to his father-in-law's seven or eight miles in the country.

Buery Knight testified that he did not see the defendant sell or deliver any whisky to Blasingame; that it was dark; that when they drove out in the country Blasingame produced a bottle of whisky and they all drank; that Mr. Lewis was

standing by the buggy when the defendant got out; that they left Blasingame at his father-in-law's and he and Cummins drove back.

John Cummins testified that they all started to a dance and Blasingame said he would not go, they drove to the defendant's feedyard and he got out there; it was about 8:30 in the evening. As they drove there, Blasingame wanted to know where they could get some whisky and nobody said anything; that when the defendant got out they started to his father-in-law's; that on the way Blasingame produced some whisky and they all drank some. The prosecuting attorney then asked him:

"Q. Didn't you tell me yesterday, in my office, that Will Bacon came back to the buggy and put something in it? A. No, sir. Q. Didn't you say Bacon came back to the buggy after he got out? A. I did not."

Ben Daisy testified that he was staying at Bacon's wagon yard; when these men drove up there he was standing in the door and the defendant got out and walked across the street and went up town; that he did not see any whisky there. He was then asked:

"Q. Did you tell me, in my office yesterday, that you saw Will Bacon deliver two bottles of whisky to Blasingame the night of the 30th day of September? A. It is just like I told you a while ago; I was drunk and didn't know what I told you. I might have told things I didn't mean to tell; I was drunk. I was not on the stand when I was talking to you."

A. D. Blasingame, recalled, testified that he knew Ben Daisy and saw him in the county attorney's office yesterday; that he was drinking some, but witness did not think he was drunk; that he heard the county attorney ask him what took place at Bacon's feedyard on the evening of September 30th, and he said he saw this fellow, Will Bacon, sell this whisky. He was then asked if he knew a man by the name of Sain, and said he did, and in company with John Cummins he bought whisky of him and afterwards filed a complaint against

Sain in the county court. Cross-examined he said he was allowed $5 a day expenses as an enforcement officer; and that Mr. Davis and Mr. Boys paid him the money here. He was then asked if Mr. Davis was not the man that owned the feedyard right across the street from the defendant's feedyard, and answered that he did not know. Thereupon, over the objection of the defendant, the state was permitted to introduce an information which charged that one Bill Sain did unlawfully sell whisky to A. D. Blasingame, which information was sworn to by A. D. Blasingame. Thereupon defendant asks that the information be withdrawn from the consideration of the jury, which request was overruled and exception allowed.

A person charged with the commission of a crime is entitled to a fair trial, which is but another way of saying one conducted according to law. We think the trial of the defendant was not conducted in this way. The court erred in several of its rulings in admitting incompetent evidence. The information against some person other than the defendant for selling whisky was clearly incompetent and inadmissible for any purpose.

Three of the witnesses for the state testified directly contrary to the testimony of the complaining witness, and the admission of the incompetent evidence was obviously an attempt to corroborate his testimony, and that in itself constitutes reversible error. *Spear v. State,* 7 Okla. Cr. 379, 123 Pac. 852.

The Attorney General admits in his brief that the language used in one of the instructions excepted to is improper, but argues that it does not constitute reversible error where the evidence conclusively shows guilt. We think that in this case the verdict has but little support in the evidence. The state, when it placed the other three witnesses upon the stand, vouched for their credibility, and we cannot say that the incompetent evidence admitted did not affect the case or prejudice the defendant. Whether the defendant be innocent or guilty,

in our opinion he has not been adjudged guilty in accordance with law.

It follows that the judgment of conviction must be reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.